FILED
CLERK, U.S. DISTRICT COURT

OCT - 2 2019

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION      BY DEPUTY

1  Janine Thomas, Mother of minor child Jacob Thomas
2  10350 Baseline Road, Space 59
   Alta Loma, CA 91701
3  Telephone: 562-716-4597
4  Email: thomas.for.court@hotmail.com

5  Plaintiff

6

7

8              IN THE UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11 Janine Thomas, mother of J. T., a minor   Case No. TBD
                                             EDCV19-01891
12 student,

13                                           COMPLAINT FOR REVERSAL OF
14        Plaintiff,                         ADMINISTRATIVE DUE PROCESS
                                             DECISION
15
                v.
16

17 Empire Springs Charter School,

18             Defendant.

19

20

21

22

23                      COMPLAINT

24 Plaintiff alleges as follows:

25

26                JURISDICTION AND VENUE

27

28

1. This Court has original jurisdiction over this action under the Individuals with Disabilities Education Act, 20 U. S. C. § 1400-1482. Plaintiff was the Petitioner in a due process hearing complaint filed with the California Office of Administrative Hearings ("OAH"), Case # 2019060591.

Jurisdiction is conferred by 20 U. S. C. § 1415(i)(3)(A).

2. Venue is proper in the Central District of California under 28 U. S. C. § 1391(b) because Plaintiff and Defendant are in this district and the claims arose in this district.

3. Plaintiff Janine Thomas filed a due process complaint on June 13, 2019 with OAH on behalf of J. T. That complaint was filed under the Individuals with Disabilities Education Act ("IDEA"). A hearing was held and completed on one day, July 9, 2019, and a decision was issued on July 19, 2019. Plaintiff has exhausted her administrative remedies and has timely filed this complaint to reverse the OAH Decision.

**THE PARTIES**

4. Plaintiff's son J. T., a minor, was a student at Empire Springs Charter School, who was "disenrolled" approximately June 8, 2019. That "disenrollment" was the subject of the expedited due process hearing at OAH that underlies this complaint. He therefore should still be enrolled at Empire Springs, and his initial assessment for special education - in progress at the time - should have taken place.

5. Plaintiff Janine Thomas, J.T.'s mother, has standing to enforce her independent rights to a free appropriate public education (FAPE) for her child, although the Supreme Court found it unnecessary to reach whether a parent may proceed pro per on behalf of her minor child.  Here the mother seeks to enforce her rights to a FAPE for her son, and therefore has standing to bring this action.  *Winkelman v. Parma City School District*, 550 U.S. 516, 526 (2007).

6. Defendant Empire Springs Charter School is a public charter school authorized under the Charter Schools Act, CA Education Code § 47600 et seq.  It is a Local Education Agency (LEA) as defined by the IDEA and its regulations, and by California state law. As a public school, at all times relevant to this matter it is and has been obliged to comply with all special education laws and applicable sections of the California Education Code, including Section 47605 related to expulsions and disenrollments.

## ISSUES

7. We are unaware of any disputed material facts in this case.  At issue before the Court are three points of law:

a. Does OAH have jurisdiction to enforce all provisions of the California Education Code which do not conflict with IDEA and its regulations when violations of those state provisions result in denial of FAPE? At issue here is Section 47605 of the Education Code.  The OAH decision found that this question is outside its jurisdiction, while the Ninth Circuit in *N. B. v Hellgate* – quoting its earlier holding in *W.G. v Target Range* –

3

appears to state clearly that "State standards that are not inconsistent with federal standards [under the IDEA] are enforceable in federal court." If that is so, then Section 47605 must be enforceable here, and accordingly by OAH in order to fulfill the purpose of administrative adjudication, to resolve issues without needless litigation in federal court.

b. Does the LEA's "basis of knowledge" of disability in 20 U. S. C. § 1415(k)(5) protect the child only if he commits a serious behavioral violation calling for expulsion, or does he forfeit this protection by failing to commit such misbehavior? We believe that to construe the law so as to free the LEA from its duty to acknowledge its "basis of knowledge" unless the child misbehaves, so that he must commit a serious act of misbehavior in order to be protected by the Act, leads to an absurd result not intended by Congress. The legislative history of § 1415(k)(5) – enacted to solve the problem of districts attempting to vitiate IDEA protections in serious disciplinary matters - indicates that § 1415(k)(5) was enacted to maintain the IDEA protections of students even in serious disciplinary matters, not to take away those protections from students that have not misbehaved. It should be found that a student that has not misbehaved has no less protection under IDEA than one who has.

c. The ALJ found that the Charter's adhesion contract, signed under duress and intended to compel the parent to constructively relinquish her right to refuse state testing, trumps all other considerations, even though the contract has as its object the violation of law – being "against the policy of the law" as stated in CA Civil Code 1668. May the Charter

4

impose such a one-size-fits all testing requirement on students with disabilities, and does it entitle the Charter to deprive parents of their right to exempt their students from state testing in violation of their rights under CA Ed Code 60615?  The Central District of California clearly held otherwise in *Y. G. v Riverside Unified School District* in 2011. We believe that that holding, which we brought to the ALJ's notice, deserved careful attention, and that noticing the case as required by CA Evidence Code 451 would have led to a different result in the administrative proceeding.

## FACTUAL BACKGROUND

8. The Springs Parent Handbook requires the parent to sign an agreement that the parent will produce the child for either the state CAASP assessment or the substantially similar Springs assessment.  Springs Superintendent Kathleen Hermsmeyer testified that the Springs alternative assessment was designed to defeat the parent right to opt out of state testing conferred by Ed Code § 60615.[1]  Hermsmeyer also clearly testified that this agreement is a "contract"- and the parent did indeed sign this contract, albeit under duress.

9. The foregoing contract is an adhesion contract, which the parent is required to sign as a condition of enrollment.  Springs agrees that it does not apply to a child with an IEP or a Section 504 plan.

---

[1]     Hermsmeyer did not name the Ed Code Section in her testimony, but 60615 is clearly the Section that she was alluding to.

5

10. Jacob had an IEP until April 1, 2019, when the parent revoked consent to special ed under 34 CFR 300.300(b)(4).  That email was included as an Exhibit on Student's Motion to Dismiss OAH Case 2018100555, filed the same day.  OAH Case 2018100555 was the District's due process case seeking an order that it might implement its proposed IEP without parent consent.

11. Springs did sort of withdraw its OAH Case 2018100555 on April 2, asking for sanctions against me, and fees, for litigating for an improper purpose, and accusing me of violating the confidentiality of mediation.  OAH denied this motion, noting that acting to prevent the LEA's litigation from going forward at all is by no means litigating for an improper purpose, also finding that we had not violated confidentiality.

12. Springs issued Prior Written Notice (PWN) – defined in 23 CFR 300.503 -  on April 3 acknowledging the revocation and stating that as of April 4 Jacob was a general education student without IDEA protections, a point that Springs made several times at hearing.

13. However, on April 5, I referred Jacob for initial assessment, thus giving Springs a "basis of knowledge" that he was a child with a disability and therefore entitled, at least in some circumstances, to IDEA protections.  And whether or not Jacob had a Section 504 plan, which is undefined in any federal statute or regulation, Springs knew that Jacob had a disability under Section 504 and was under its protection, since it had been seeking to implement an IEP until it was compelled to withdraw due process Case 2018100555 by parent revocation of special education under IDEA.  And enforcing its one-size-fits-all requirement to its standardized testing did conflict with Jacob's rights

under Section 504, which is why Springs exempts students with 504 plans from that requirement.

14. On April 19, 2019, Springs provided an assessment plan for the initial assessment required by the referral to special education of April 4, 2019 – just barely within the 15 day deadline prescribed by CA Ed Code § 56043(a). Thus Springs clearly had a "basis of knowledge" of Jacob's disability, whether from April 5 or 19 being immaterial to this case, which concerns the "disenrollment" in June. The ALJ's decision agrees that Springs had this basis of knowledge, so this point is not in dispute.

15. Springs sent notice about June 7 that Jacob was disenrolled from Springs, and on June 13, I filed an expedited due process complaint seeking to nullify that action. The hearing was held on July 9, and the decision upholding the disenrollment was issued on July 19.

·

**STANDARD OF REVIEW**

16. We take this from the Ninth Circuit's holding in *M.C. v Antelope Valley Union High School District,* 858 F.3d 1189 (9th Circuit, 2017)

> Judicial review in IDEA cases "differs substantially from judicial review of other agency actions, in which courts are generally confined to the administrative record and are held to a highly deferential standard of review." Ojai Unified Sch. Dist. v. Jackson, 4 F.3d 1467, 1471 (9th Cir. 1993). We review whether the state has provided a FAPE de novo. *Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1524 (9th Cir. 1994). We can accord some deference to the ALJ's factual findings, but only where they are "thorough and careful," and "the

7

extent of deference to be given is within our discretion." Id. (citations omitted).

17. Accordingly, this Court must give deference to the ALJ's factual findings where they are "thorough and careful," but the Court's analysis of legal conclusions is de novo, as is its analysis of questions of mixed facts and law. We see no material factual problems. But the ALJ erred in several crucial questions of law.

## ERRORS IN APPLYING THE LAW

18. The ALJ improperly dismissed Student's sub-issue relating to the Charter's violation of CA Ed Code 47605(b)(5)(J). The ALJ rejected the mandatory 9th Circuit authority in *Union v Smith* and *N.B. v Hellgate*, along with related cases, that clearly hold that federal courts have jurisdiction to enforce state standards in IDEA cases, and that therefore violations of these may constitute denial of FAPE. This accords with the IDEA definition of FAPE, the second of the four prongs of that definition being compliance with "the standards of the State education agency." 20 U.S.C. § 1401(9)(B). Since OAH dismissed this sub-issue, our administrative remedies have been exhausted, and the question belongs in this Court, which should reverse the ALJ's error of law.

19. CA Ed Code 47605(b)(5)(J) governs all "involuntary removals for any reason" by charter schools. 47605(b)(5)(J)(iii) provides that for ANY involuntary removal the charter must inform the parent of the right to the hearing specified in 47605(b)(5)(J)(ii) and that the child may not be removed until that hearing has been held, in these words:

(iii) Contain a clear statement that no pupil shall be involuntarily removed by the charter school for any reason unless the parent or guardian of the pupil has been provided written notice of intent to remove the pupil no less than five schooldays before the effective date of the action.   The written notice shall be in the native language of the pupil or the pupil's parent or guardian or, if the pupil is a foster child or youth or a homeless child or youth, the pupil's educational rights holder, *and shall inform him or her of the right to initiate the procedures specified in clause (ii) before the effective date of the action.   If the pupil's parent, guardian, or educational rights holder initiates the procedures specified in clause (ii), the pupil shall remain enrolled and shall not be removed until the charter school issues a final decision.   For purposes of this clause, "involuntarily removed" includes disenrolled, dismissed, transferred, or terminated,* but does not include suspensions specified in clauses (i) and (ii) [emphasis added]

20. The hearing required in this subsection must be "adjudicated by a neutral officer within a reasonable number of days at which the pupil has a fair opportunity to present testimony, evidence, and witnesses and confront and cross-examine adverse witnesses, and at which the pupil has the right to bring legal counsel or an advocate."   It is indisputable that Springs failed to inform the parent of this right and indeed refused to provide this hearing before "disenrolling" Jacob.

Violating this provision led directly to deprivation of educational benefits, including the ongoing assessment; infringed on parent participation in developing an IEP through that

9

assessment process; and by unlawfully exiting Jacob from Springs without the mandated due process, deprived him of educational benefits and denied him the opportunity to obtain a FAPE. All of these violations – arising through failure to "meet the standards of the State education agency" - constitute denial of FAPE, and should have been adjudicated by the ALJ.

21. The ALJ likewise failed to consider the mandate of 56302.1(a), which lies indisputably within the jurisdiction of OAH. Although we did not raise the statute in our complaint, CA Ed Code 56302.1(a) requires that initial assessment, once in progress, must be completed, so 56302.1(a) should have been considered and adjudicated, especially since we raised it in detail in our opening statement and again in our closing brief. Even the federal courts are free to rely on any proper statutory basis for their holdings; how much more then is OAH, where pleading standards are minimal, as the US Supreme Court held in *Schaffer v Weast*. Thus it was improper for the ALJ to wholly ignore CA Ed Code 56302.1(a) in reaching his decision.

22. Ed Code 56302.1(a) leaves no doubt of the Charter's duty to complete the assessment and convene the IEP meeting, in which it might be determined that the Charter's alternative assessments are inappropriate. That's why assessment must be completed before determining that a student with a disability must be tested in a given way, or even that it is appropriate to do so. Hence insistence on a particular form of testing, when the agency has a "basis of knowledge" of the student's disability, and while the agency's evaluations are in progress, necessarily denies FAPE.

10

23. The Charter's contract requiring Jacob to take the Charter's equivalent of state testing – designed to vitiate Ed Code 60615 as Springs CEO Hermsmeyer testified - must be found unenforceable with regard to any student concerning which the Charter has a "basis of knowledge" of his disability, because such a one-size-fits-all rule, if enforced with no regard for disability, must discriminate against any student whose disability might interfere with the test.

24. Moreover, CA Civil Code 1668 states in pertinent part that, "All contracts which have for their object, directly or indirectly, . . . violation of law, whether willful or negligent, are against the policy of the law." Accordingly, this contractual provision - designed to deny parents the right granted by the legislature in Ed Code 60615 to exempt their students from state testing - should be found unenforceable as against the policy of the law, as Civil Code 1668 prescribes.

25. The ALJ improperly ignored these legal questions in deciding that the parent's failure to comply with the Charter's requirement was all that was to be said about the significance of the Parent Handbook contract. Any such contract is unenforceable as contrary to public policy, if it violates the law in this way. See *Y. G. v Riverside Unified School District*, 774 F. Supp. 2d 1055 (C. D. Cal., 2011).

26. As the ALJ rightly stated in his Decision, students in public charter schools are entitled to all the protections of special education law that apply to students in other public schools. Among the rights of such students is the right not to be "disenrolled" from the public school for declining state testing as prescribed by Ed Code 60615 – a right that applies to all students, not just those having disabilities. Accordingly, charter school

(1

students should enjoy the same protections. The legislature attempted to prevent such abusive charter school disenrollments through the procedural protections of Ed Code 47605(b)(5)(J)(ii and iii). The ALJ should have enforced the legislature's intention, and now this Court should do so.

## CAUSE OF ACTION

### For Reversal of OAH Due Process Decision

27. Plaintiffs incorporate by reference each and every allegation in the foregoing paragraphs as though fully set forth herein.

28. Plaintiffs established at hearing that Springs disenrolled Jacob in violation of CA Ed Code 47605(b)(5)(J), as demonstrated by undisputed documentary evidence, and therefore denied FAPE by failing to "meet the standards of the State education agency."

29. Plaintiffs also established that the initial assessment for special education was in progress when Jacob was disenrolled, and was supposed to be completed, as stated in CA Ed Code 56302.1. It was undisputed, and the ALJ's Decision so stated, that Springs had a "basis of knowledge" of Jacob's disability at the time he was disenrolled. Rules of statutory construction mandate that Springs had to act on that "basis of knowledge" "even if" – not "only if" – Jacob had violated a rule of conduct. Jacob's failure to commit a serious act of misconduct did not excuse the Charter's obligation to act upon its acknowledged "basis of knowledge" of his disability, which certainly might have made its standardized testing inappropriate and invalid for this disabled student.

30. Plaintiffs also established at hearing that the Parent contract to submit to the Charter's testing was not enforced by Springs in the case of students with disabilities, and accordingly should not have been enforced against Jacob.  And in any case, it should be found unenforceable as "against the policy of the law," as stated in Civil Code 1668 and for other reasons explained in detail by the Central District in *Y. G. v Riverside Unified School District* on very similar facts

## PRAYER FOR RELIEF

Plaintiffs request relief as follows:

1.  The Court reverse the OAH Decision and find that the AJ wrongly applied the law as described above, and that Jacob's "disenrollment" be reversed.

2.  The Court exercise its "broad discretion" to fashion an appropriate equitable remedy for the Charter's wrongful "disenrollment" of Jacob.  This should include funding independent evaluations in place of the evaluations that the Charter was performing and wrongfully stopped.  The Charter's vindictive behavior toward Jacob and his family in carrying out this unlawful "disenrollment" should be noticed by the Court, which should find that the Charter cannot be expected to perform appropriate assessments itself.  Included in this remedy should be appropriate services, based on the independent assessments, to make Jacob whole from his loss of educational opportunity and deprivation of educational benefits resulting from the Charter's misconduct in this matter.

13

3. The Court order reimbursement of reasonable attorney fees and costs incurred in prosecuting this complaint.

4. The Court order such additional relief as it considers proper.

Dated:  October 2, 2019

By: _____

Janine Thomas, Mother of Minor Student Jacob Thomas

14

**BEFORE THE**
**OFFICE OF ADMINISTRATIVE HEARINGS**
**STATE OF CALIFORNIA**

# IN THE MATTER OF:

# PARENTS ON BEHALF OF STUDENT,

## v.

# EMPIRE SPRINGS CHARTER SCHOOL.

# OAH CASE NUMBER 2019060591

## EXPEDITED DECISION

Parents on behalf of Student filed an expedited due process hearing request with the Office of Administrative Hearings, State of California, on June 13, 2019, naming Empire Springs Charter School.  The Office of Administrative Hearings is commonly referred to as OAH.

Student's due process hearing request initially contained expedited and non-expedited hearing claims.  OAH set the expedited and non-expedited matters for separate hearings.  On July 12, 2019, Student filed with OAH a request to vacate the non-expedited dates, as Parents acknowledged there was only an expedited claim for hearing and no non-expedited claims remained.  Accordingly, OAH vacates the non-expedited dates.  The expedited claim proceeded to hearing with no continuances. (34 C.F.R. § 300.532(c)(2).)

Administrative Law Judge Rommel P. Cruz heard this matter in Rancho Cucamonga, California, on July 9, 2019.

15

Mother and Father represented Student.  Advocate Peter Attwood attended the hearing to assist Parents.  Student did not attend the hearing.

Attorneys Jim Sanft and Deborah Cesario represented Empire Springs.  Kathy Cox, Ed.D., Senior Director of Special Education, attended the hearing on behalf of Empire Springs.

On July 9, 2019, the last day of hearing, the record was closed and the matter was submitted for decision.  The Administrative Law Judge allowed the parties to file written closing arguments during the submittal time.

## ISSUE

1. Did Empire Springs expel Student on June 13, 2019, in violation of title 20 United States Code section 1415(k) and Education Code section 48900?

The Administrative Law Judge rephrased and clarified with the parties the expedited issue as stated in both Student's and Empire Springs' expedited prehearing conference statements, as allowed by the holdings in *J.W. v. Fresno Unified Sch. Dist.* (9th Cir. 2010) 626 F.3d 431, 442-443, and *Ford v. Long Beach Unified Sch. Dist.* (9th Cir. 2002) 291 F.3d 1086, 1090.  (But see *M.C. v. Antelope Valley Union High Sch. Dist.* (9th Cir. 2017) 858 F.3d 1189, 1196, fn. 2 [dictum].)  No change in substance has been made.

## STUDENT'S MOTION

OAH received the parties' closing briefs on July 12, 2019.  On July 15, 2019, Student filed a Request to Strike Arguments made by Empire Springs in its closing brief.  Empire Springs filed an opposition on July 18, 2019, and Student filed a reply to the opposition on July 19, 2019.  Student's motion is denied as Empire Springs' closing brief is merely argument as to its position in this case.

2

16

On July 19, 2019, OAH received from Student a notice of correspondence from Empire Springs to Parents dated July 11, 2019. The correspondence will not be considered for purposes of this Expedited Decision.

## SUMMARY OF DECISION

This Expedited Decision holds that Student did not meet his burden of proving his disenrollment from Empire Springs on June 13, 2019, violated title 20 United States Code section 1415(k) and Education Code section 48900. Student was a general education student at the time of disenrollment. He did not complete Empire Springs' mandatory testing for the 2018-2019 school year as agreed to by Student and Mother in the Student Agreement. This requirement was fully explained in Empire Springs' Parent Handbook that Parents received. The failure to complete the mandatory testing was a breach of the Student Agreement. As a result, pursuant to Empire Springs' policies, Student became ineligible to reenroll in Empire Springs the following school year. Student did not violate the charter school's student code of conduct. He was not expelled. His disenrollment was not a disciplinary change in placement. Therefore, Student did not prove that Empire Springs committed a violation of section 1415(k) and section 48900, as those code sections did not apply under these circumstances.

## FACTUAL FINDINGS

### BACKGROUND

Student was 14 years old at the time of hearing. He resided with Mother and Father within San Bernardino County at all relevant times. He was enrolled in the independent study homeschool program at Empire Springs for the 2018-2019 school year. Empire Springs is a charter school within the Springs Charter Schools network.

3

Student began the 2018-2019 school year eligible for special education. However, Parents exited Student from special education on April 1, 2019.

Empire Springs provided Parents with a Parent Handbook.  In a section that covered testing and assessments at Springs Charter Schools, the Parent Handbook explained that students were required to participate in the statewide assessments, known as the California Assessment of Student Performance and Progress.  However, a student could opt out of taking the California Assessment of Student Performance and Progress.  If a student opted out of taking the California Assessment of Student Performance and Progress, the student would be offered an alternative Common Core grade-level exam that Empire Springs used to judge a student's educational progress.  The Parent Handbook spelled out that students who do not participate in either the California Assessment of Student Performance and Progress or the alternative exam would not be allowed to reenroll in any of the schools within Springs Charter Schools the following year.

However, students with an individualized education program, also known as an IEP, or a plan pursuant to section 504 of the Rehabilitation Act, also referred to as a 504 Plan, and were unable to take the mandatory exams due to their disability, were allowed to reenroll the following school year.  Nevertheless, a parent still needed to make a request to Empire Springs to opt the child out of either testing.  For the 2015-2016 and 2016-2017 school years, Parents opted Student out of taking the California Assessment of Student Performance and Progress and the alternative exam.  Student during both prior school years had an IEP, Empire Springs excused Student from taking the required exams, and permitted Student to reenroll the following school years.

Empire Springs also required students and parents who chose to participate in the independent study homeschool program to sign a Student Agreement. The Student Agreement operates as a contract between Empire Springs, a student and the student's parent. By signing the agreement, a parent and student agrees to, among other things, for the student to participate in mandatory evaluations that included the California Assessment of Student Performance and Progress or the school's alternative exam. Student, Mother and Empire Springs' education specialist Patrick Collins signed a Student Agreement on March 26, 2018. The agreement was effective August 27, 2018, through June 13, 2019.

Springs Charter Schools' superintendent Kathleen Hermsmeyer, Ed.D., testified that mandatory testing was key to Empire Springs' ability to implement its homeschool program. In its non-classroom based homeschool program, parents provided their child's day-to-day instruction. The assigned education specialist met with the homeschooled student and parent at least once every 20 school days to review the student's assignments and progress, and to work with the parent to develop learning plans. Dr. Hermsmeyer explained that due to the education specialist's limited interaction with a student, a proctored exam at least once a year was necessary to obtain a more accurate picture of a homeschooled student's achievement. The testing was also necessary for Empire Springs to comply with California's reporting requirements for charter schools. Hence, she opined, Empire Springs had a need to require a homeschooled student and parent to complete mandatory testing each year as part of their enrollment at the charter school.

On March 29, 2019, Empire Springs provided Parents with a letter advising them of Student's assigned dates and times to take the California Assessment of Student Performance and Progress. The testing dates were from May 7, 2019, through

5

May 10, 2019.  The letter also indicated that if Student was not able to attend his scheduled test dates, he would need to attend make-up testing the following week.  The letter warned that if he failed to attend the make-up testing, he may not be able to reenroll at Springs Charter Schools the following school year.

On April 1, 2019, Mother emailed Empire Springs' Senior Director of Special Education Kathy Cox, Ed.D., and Empire Springs' attorney, Jim Sanft, that she was revoking her consent for Empire Springs to continue providing special education and related services to Student.

On April 3, 2019, Dr. Cox emailed a letter to Parents responding to their revocation of consent to special education and related services.  The letter advised Parents that effective April 4, 2019, Empire Springs would discontinue all special education and related services to Student and he would no longer receive the educational supports offered in his IEP.  He would become a general education student. This meant Empire Springs would treat him as a general education student in all respects, including discipline, testing and graduation.  Furthermore, the letter indicated that a future request for special education and related services from Empire Springs would be treated as a request for an initial evaluation of Student.

On April 5, 2019, Mother emailed Dr. Hermsmeyer and Dr. Cox requesting "an initial special education assessment" of Student.  At hearing, Mother explained that she believed her request for an assessment had reinstated Student's status as a special education student.

On April 7, 2019, Mr. Collins emailed Mother a letter with dates and times Empire Springs would administer the California Assessment of Student Performance and Progress.  He understood Student was no longer receiving special education.  Mr. Collins

stated that in the event students opted out of the California Assessment of Student Performance and Progress, an alternative exam would be offered.  His email explained that students who intend to return to Springs Charter Schools the following school year are required to take either the California Assessment of Student Performance and Progress or the alternative exam.

Mother emailed Mr. Collins the same day, indicating that Student was in special education and that she "put him back in" that past Friday, April 5, 2019.  On April 8, 2019, Mother emailed Mr. Collins that she was opting Student out of both the California Assessment of Student Performance and Progress and the alternative exam. Mother stated that she would "Opt Out of all alternative state testing."  Student did not take the California Assessment of Student Performance and Progress or an alternative exam during the 2018-2019 school year.

On April 19, 2019, Dr. Cox emailed Mother an assessment plan for Student's initial evaluation pursuant to Mother's April 5, 2019 request.  Mother provided written consent to the assessment plan on April 23, 2019.

On May 20, 2019, Empire Springs provided Parents with a letter noting that Student did not participate in the state mandated testing or alternative exam for the school year.  The letter stated that Springs Charter Schools required all students to participate in all state required assessments and those assessments agreed to by the parent in the Student Agreement.  Springs Charter School students were expected to demonstrate their attainment of skills by completing either the California Assessment of Student Performance and Progress or the charter school's alternate exam.  The letter warned that failing to complete the required assessments could result in Student not being eligible to enroll at Springs Charter Schools for the 2019-2020 school year.

On June 3, 2019, Empire Springs provided Parents a letter informing them that Student would be disenrolled from Empire Springs effective June 13, 2019.  The letter explained the reason for disenrollment was due to Student not completing Springs Charter Schools' annual assessment requirement.  The letter provided the email and phone numbers of two Springs Charter Schools staff members to contact should Parents wish to appeal the decision.  Parents did not file an appeal with Springs Charter Schools.

## LEGAL AUTHORITIES AND CONCLUSIONS

### INTRODUCTION – LEGAL FRAMEWORK FOR STUDENT DISCIPLINE UNDER THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT

Unless otherwise indicated, the legal citations in the introduction are incorporated by reference into the analysis of the issue decided below.  All references to title 34 Code of Federal Regulations are to the 2006 version.

This hearing was held under the Individuals with Disabilities Education Act, its regulations, and California statutes and regulations intended to implement it.  (20 U.S.C. § 1400 et seq.; 34 C.F.R. § 300.1 et seq.; Ed. Code, § 56000, et seq.; Cal. Code Regs., tit. 5, § 3000 et seq.)  The Individuals with Disabilities Education Act is commonly referred to as the IDEA.

Under the IDEA and California law, children with disabilities have the right to a free appropriate public education.  (20 USC § 1400(d); Ed. Code, § 56000.)  A free appropriate public education is also referred to as a FAPE.  A FAPE is defined as appropriate special education, and related services, that are available to the pupil at no cost to the parent or guardian, that meet the state educational standards, and that conform to the pupil's IEP.  (20 U.S.C. § 1401(9); Ed. Code, §§ 56031 & 56040; Cal. Code Regs., tit. 5, § 3001, subd. (o).)

A child's unique educational needs are to be broadly construed to include the child's academic, social, health, emotional, communicative, physical and vocational needs.  (*Seattle Sch. Dist. No. 1 v. B.S.* (9th Cir. 1996) 82 F.3d 1493, 1500, citing H.R. Rep. No. 410, 1983 U.S.C.C.A.N. 2088, 2106.)

Title 20 United States Code section 1415(k) and title 34 Code of Federal Regulations, part 300.530, et seq., govern the discipline of special education students. (Ed. Code, § 48915.5.)  A student receiving special education services may be suspended or expelled from school as provided by federal law.  (20 U.S.C. §1412(a)(1)(A); Ed. Code, § 48915.5, subd. (a).)

If a special education student violates a code of student conduct, school personnel may remove the student from his or her educational placement without providing services for a period not to exceed 10 days per school year, provided typical children are not provided services during disciplinary removal.  (20 U.S.C. § 1415(k)(1)(B); 34 C.F.R. § 300.530(b)(1) & (d)(3).)

For disciplinary changes in placement greater than 10 consecutive school days (or that are a pattern that amounts to a change of placement), the disciplinary measures applicable to students without disabilities may be applied to a special education student if the conduct resulting in discipline is determined not to have been a manifestation of the special education student's disability.  (20 U.S.C. § 1415(k)(1)(C); 34 C.F.R. §§ 300.530(c) & 300.536(a)(1), (2).)

A parent of a special education student may appeal a school district's determination that a particular conduct resulting in a disciplinary change of placement was not a manifestation of the child's disability by requesting an expedited due process hearing.  (20 U.S.C. § 1415(k)(3)(A); 34 C.F.R. § 300.532(a) & (c).)  The hearing must be

23

conducted within 20 school days of the date an expedited due process hearing request is filed and a decision must be rendered within 10 school days after the hearing ends. (20 U.S.C. § 1415(k)(4)(B); 34 C.F.R. 300.532(c)(2).)

At the hearing, the party filing the complaint has the burden of persuasion by a preponderance of the evidence.  (*Schaffer v. Weast* (2005) 546 U.S. 49, 56-62 [126 S.Ct. 528, 163 L.Ed.2d 387]; see 20 U.S.C. § 1415(i)(2)(C)(iii) [standard of review for IDEA administrative hearing decision is preponderance of the evidence].)

### ISSUE:  DID EMPIRE SPRINGS EXPEL STUDENT ON JUNE 13, 2019, RESULTING IN A VIOLATION OF TITLE 20 UNITED STATES CODE SECTION 1415(K) AND EDUCATION CODE SECTION 48900?

Student contends that he was expelled, not disenrolled, from Empire Springs on June 13, 2019.  He claims that his exit from Empire Springs was a disciplinary change of placement as a result of Parents' decision not to have him complete either the California Assessment of Student Performance and Progress or the charter school's alternative exam during the 2018-2019 school year.  He argues the change of placement triggered the procedural protections afforded to him by the IDEA for students who a school has reason to believe may have a disability.

Empire Springs contends that Student's disenrollment from Empire Springs was not a disciplinary change of placement, and therefore, title 20 United States Code section 1415(k) and Education Code section 48900 did not apply.

Here, Student requested the hearing in this expedited matter, and therefore Student has the burden of proof on the issue.

24

**Student's Disenrollment from Empire Springs was Not a Disciplinary Change in Placement**

The child find laws are not generally applicable to discipline procedures where a general education pupil commits a violation of law or school rules before he has been assessed for special education, unless the local education agency had knowledge that the child was a child with a disability before the behavior that precipitated the disciplinary action occurred.  (20 U.S.C. § 1415(k)(5)(B); 34 C.F.R. § 300.534(a).)

If a request for an evaluation occurs while the child is subjected to disciplinary measures the evaluation must be conducted in an expedited manner and the child remains in the placement determined by the district, including suspension or expulsion, until the evaluation is completed.  (34 C.F.R. § 300.534(d)(2)(i) & (ii).)  If the child is determined to be a child with a disability, then special education and related services must be provided, including the requirements of title 34 Code of Federal Regulations, parts 300.530 through 300.536, and title 20 United States Code section 1412(a)(1)(A). (34 C.F.R. § 300.534(d)(2)(iii).)

Education Code section 48900 states that a pupil shall not be suspended from school or recommended for expulsion, unless the superintendent of the school district or the principal of the school in which the pupil is enrolled determines that the pupil has committed an act as defined under subsections (a) through (r) of section 48900.

Children with disabilities who attend public charter schools and their parents retain all rights under the IDEA and its regulations.  (34 C.F.R. § 300.209(a).)  A charter school that is a public school of a local educational agency must serve children with disabilities attending those charter schools in the same manner as the local educational agency serves children with disabilities in its other schools.  (*Id.* at subd. (b)(1)(i).)

11

Student did not prove that his failure to complete either the California Assessment of Student Performance and Progress or the charter school's alternative exam resulted in a disciplinary change in placement. Mother revoked consent for special education and related services. This led to Student no longer being entitled to receive the educational supports offered in his IEP and he became a general education student. A general education student remains in general education until an IEP team determines the student is eligible for special education, and parental consent is given to the student's IEP. (20 U.S.C. § 1414(b)(4)(A); 34 C.F.R. § 300.300(b)(1).) Mother's request for initial assessment of Student for special education on April 5, 2019, did not rescind her revocation of consent. It also did not reinstate Student's status as a special education student. As a result, Student remained a general education student at the time he was disenrolled.

Empire Springs required all of its students to complete either the California Assessment of Student Performance and Progress or an alternative exam for the 2018-2019 school year, unless the student had an IEP or a 504 Plan. Student and Mother entered into a contract with Empire Springs by signing a Student Agreement, agreeing to fulfill that requirement. Student was a general education student and did not have an IEP at the time the mandatory tests were administered for the 2018-2019 school year. Student's failure to complete the mandatory testing was not a misconduct on his part. Rather, it was a failure on Mother's part to fulfill her contractual obligation under the Student Agreement to allow Student to complete the tests required for his continued enrollment at Empire Springs. Further, Parents did not appeal the disenrollment as permitted in Empire Spring's June 3, 2019 letter. The evidence did not establish that a failure to complete either the California Assessment of Student

Performance and Progress or the charter school's alternative exam for the 2018-2019 school year was a violation of the charter school's student code of conduct that would subject Student to discipline.

Furthermore, though Empire Springs had a basis of knowledge that Student had a disability, there was no evidence that Student committed an act that violated the charter school's student code of conduct, or the law.  The evidence did not establish that his disenrollment was a measure of discipline, that it constituted a disciplinary change in placement, or that his exit from the charter school was a result of being expelled for violating the student code of conduct.  The restrictions placed on expelled students did not apply to Student, as he could enroll in another school district without the approval of the other school district's governing board.  (Ed. Code § 48915.1.)  Accordingly, title 20 United States Code section 1415(k) and Education Code section 48900 did not apply under these circumstances.  Therefore, Student did not meet his burden of proving Empire Springs violated title 20 United States Code section 1415(k) and Education Code section 48900 when it disenrolled Student on June 13, 2019.

This Expedited Decision makes no determination as to whether Empire Springs' policies and procedures as it relates to the disenrollment of a student for failing to complete the charter school's annual assessment requirement is consistent with any other provision of federal or state law.

**ORDER**

All relief sought by Student is denied.

13

**PREVAILING PARTY**

Pursuant to California Education Code section 56507, subdivision (d), the hearing decision must indicate the extent to which each party has prevailed on each issue heard and decided.  Here, Empire Springs was the prevailing party on the sole issue presented.

**RIGHT TO APPEAL**

This Expedited Decision is the final administrative determination and is binding on all parties.  (Ed. Code, § 56505, subd. (h).)  Any party has the right to appeal this Expedited Decision to a court of competent jurisdiction within 90 days of receiving it. (Ed. Code, § 56505, subd. (k).)

DATED: July 19, 2019

DocuSigned by:

*Rommel P. Cruz*

2ABEBDA0DF98475...

ROMMEL P. CRUZ
Administrative Law Judge
Office of Administrative Hearing

14

28