UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 19-1891 JGB (SPx)** | Date | March 5, 2021 |
|---|---|---|---|
| Title | *Janine Thomas v. Empire Springs Charter School* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) DENYING Plaintiff's Motion for Summary Judgment (Dkt. No. 35); and (2) VACATING the March 8, 2021 Hearing. (IN CHAMBERS)

Before the Court is Plaintiff Janine Thomas' Motion for Summary Judgment. ("Motion," Dkt. No. 35.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the matter, the Court DENIES the Motion.

## I. BACKGROUND

This case involves a dispute over the education of minor child J.T. under the Individuals with Disabilities and Education Act, 20 U.S.C. §§ 1400–91 ("IDEA"). Plaintiff Janine Thomas, J.T.'s mother, seeks a reversal of the Office of Administrative Hearing's ("OAH") decision that Defendant Empire Springs Charter School did not violate IDEA by failing to provide her son with a free appropriate public education ("FAPE").

On June 7, 2019, Plaintiff Janine Thomas received notice that her son J.T. would be disenrolled from school effective June 13, 2019 for failure to meet Defendant's testing requirements. (Complaint ¶ 7.) Plaintiff filed an expedited due process complaint with the OAH for review of that decision on June 13, 2019. (Complaint ¶ 7.) The OAH upheld J.T.'s disenrollment on July 19, 2019. (Id. at 7, Exhibit A, "OAH Decision".) On October 2, 2019, Plaintiff filed her complaint against Defendant Empire Springs Charter School. ("Complaint,"

Dkt. No. 1.) The Complaint seeks reversal of the OAH's July 19, 2019 decision. (See Complaint.)

On January 11, 2021, Plaintiff filed a Motion for Summary Judgment accompanied by a Statement of Undisputed Facts. ("Rescinded Motion," Dkt. No. 33; "PSUF," Dkt. No. 34.) On January 12, 2021, Plaintiff terminated the Rescinded Motion and filed a corrected Motion for Summary Judgment. (Motion.)

On February 10, 2021, Defendant opposed the Motion. ("Opposition," Dkt. No. 37.) In support of the Opposition, Defendant also filed a Statement of Undisputed Facts. ("DSUF," Dkt. No. 38.) Defendant also filed a request for judicial notice. (Dkt. No. 39.)

Plaintiff replied on February 24, 2021. ("Reply," Dkt. No. 40.)

## II.   FACTS

Plaintiff's Complaint contains a copy of the OAH decision with factual findings. (See OAH Decision.) Plaintiff has also submitted a statement of undisputed facts, (see PSUF,) to which Defendant has responded. (See DSUF.)

Student J.T., who was fourteen years old at the time of his hearing, was enrolled in the independent study homeschool program at Empire Springs ("the School") for the 2018-2019 school year. (OAH Decision at 3.) The School is a charter school within the Springs Charter Schools network which provides materials and structure for parents to homeschool their children. (Id. at 4.) J.T. began the 2018-2019 school year eligible for special education. (Id.)

The School has a "Parent Handbook" which provides information to parents about School policies. (DSUF ¶ 3.) In a section covering testing and assessment at the School, the Parent Handbook states that students at the School are required to participate in statewide assessments known as the California Assessment of Student Performance and Progress ("CASPP"). (OAH Decision at 4.) However, students are permitted to opt out of the CASPP test so long as they take an alternative Common Core grade-level exam the School used to judge a student's educational progress. (Id.) The Parent Handbook states that students who do not participate in either the CASPP test or the alternative exam are not allowed to reenroll in any of the school within the Springs Charter Schools network the following year. (Id.) However, students with an individualized education program, also known as an IEP, who are unable to take mandatory exams due to their disability are allowed to reenroll without testing. (Id.) Parents must request this option. (Id.)

During the 2015-2016 and 2016-2017 school years, Plaintiff opted J.T. out of both the CASPP exam and the alternative Common Core Exam. (Id.) During both of those school years, J.T. had an IEP, the School excused him from taking the exams, and he was permitted to reenroll the following year. (Id.) The record does not include information as to whether J.T. was excused from taking exams during the 2017-2018 school year.

The School also required parents homeschooling their children through Empire Springs to sign a "Student Agreement." (Id. at 5.) The Student Agreement requires parents to agree to submit their student children for mandatory evaluations including the CASPP or the school's alternative exam. (Id.) Plaintiff signed J.T.'s Student Agreement on March 26, 2018. (Id.) The Student Agreement was effective August 27, 2018 through June 13, 2019. (Id.) Defendant's superintendent Kathleen Hermsmeyer testified that mandatory testing was required for the School to implement its homeschool program in compliance with California's reporting requirements for charter schools. (Id. at 6.)

On March 29, 2019, the School provided Plaintiff a letter advising her of J.T.'s assigned dates and times to take the CASPP test. (Id.) The testing dates were from May 7, 2019 through May 10, 2019. (Id. at 6.) The letter also indicated that if J.T. was not able to attend his scheduled test dates, he would need to attend make-up testing the following week, and if he did not attend make-up testing, his ability to re-enroll at the School would be jeopardized. (Id.)

On April 1, 2019, Plaintiff revoked consent for J.T. to receive special education services. (Id.)

On April 3, 2019, Dr. Cox, the director of Special Education at the School, emailed a letter to Plaintiff acknowledging her revocation of consent to special education services. (Id.) The letter advised Plaintiff that effective April 4, 2019, the School would discontinue all special education and related services to J.T. and he would no longer receive the educational supports offered in his IEP. (Id.) The letter also stated that the School would treat J.T. as a general education student in all respects, including for testing, discipline, and graduation. (Id.)

On April 5, 2019, Plaintiff submitted a request to have J.T. re-evaluated for special education services. (Id.; DSUF ¶ 9.) At the OAH Hearing, Plaintiff explained that she believed her request for an assessment had automatically reinstated J.T.'s status as a special education student. (OAH Decision at 6.)

On April 7, 2019, Mr. Collins, a representative from the School, emailed Plaintiff a letter with the dates and times the School would administer the CASPP test. (Id.) Mr. Collins understood J.T. was no longer a special education student. (Id.) His email to Plaintiff explained that if J.T. opted out of the CASPP test, an alternate exam would be offered. (Id. at 7.) His email also stated that students who intended to return to the School to following school year were required to take either the CASPP test or the alternate exam. (Id.)

Later in the day on April 7, 2019, Plaintiff responded to Mr. Collins' email indicating that J.T. was in special education and that she had "put him back in" that past Friday, April 4, 2019. (Id.) On April 8, 2019, Plaintiff emailed Mr. Collins to indicate that she was opting out of both the CASPP test and the alternate test. (Id.) She stated she would "opt out of all alternative state testing." (Id.) J.T. did not take the CASPP test or an alternative exam during the 2018-2019 school year. (Id.)

On April 19, 2019, Dr. Cox emailed Plaintiff an assessment plan for J.T.'s initial evaluation pursuant to Plaintiff's April 5, 2019 request to enroll him in special education services. (Id.)  Plaintiff provided written consent to the assessment plan on April 23, 2019. (Id.)

On May 20, 2019, the School provided Plaintiff with a letter providing notice that J.T. did not participate in either the CASPP test or the alternative exam for the school year. (Id.)  The letter stated that the School required all students to participate in all state-required assessments and those assessments agreed to by the parent in the Student Agreement. (Id.)  The letter warned that failing to complete the required assessments could result in J.T. not being eligible to enroll at the School for the 2019-2020 school year. (Id.)

On June 3, 2019, Defendant sent Plaintiff a disenrollment letter stating that J.T. would be disenrolled from the School on June 13, 2019, and that he would not be allowed to re-enroll for a year. (Id. at 8; DSUF ¶ 12.)  The letter provided the contact information of two School staff members to contact should Plaintiff desire to appeal the decision.  Plaintiff did not file an appeal with the School.  (OAH Decision at 8.)

On June 13, 2019, Plaintiff requested a due process hearing. (Dkt. No. 10-3 p. 63.)  In her request, Plaintiff stated that Defendant violated J.T.'s rights by disenrolling J.T. from Empire Springs without a hearing. (Id.)

On July 19, 2019, Administrative Law Judge Rommel P. Cruz ruled that J.T.'s disenrollment from the School was not a disciplinary change in placement. (OAH Decision at 11.)  Judge Cruz held that Plaintiff did not meet his burden of proof in establishing violation of either 20 U.S.C. § 1419(k) or California Education Code § 48900, but made "no determination" as to whether the School's policies regarding disenrollment of students for failure to complete annual assessment "is consistent with any other provision of federal or state law." (Id. at 13.)

On October 2, 2019, Plaintiff filed the Complaint, which alleges that there are no disputed material facts remaining in the case, only question of law. (Complaint ¶ 7.)  Plaintiff's questions of law include: (1) Whether OAH had jurisdiction to enforce Cal. Ed. Code § 47605, a provision which governs the establishment of charter schools; (2) Whether J.T. was protected by 20 U.S.C. § 1415(k)(5), which states that a child who has not been determined to be eligible for special education and related services, and who has engaged in behavior that violates a code of student conduct, may assert protections under the statute if an educational agency had knowledge that the child was a child with a disability before the behavior that precipitated the disciplinary action occurred; and (3) Whether the Student Handbook violates the right of parents to exempt their students from state testing under Cal. Ed. Code § 60615, which states that "[n]otwithstanding any other provision of law, a parent's or guardian's written request to school officials to excuse his or her child from any or all parts of the assessments administered pursuant to this chapter shall be granted."

## III. LEGAL STANDARD

Congress created the Individuals with Disabilities Education Act ("IDEA") to meet the unique needs of disabled children by mandating a free and appropriate public education ("FAPE"). Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 181 (1982). The IDEA contains various procedural safeguards to assure that schools meet these unique needs. Ojai Unified Sch. Dist. v. Jackson, 4 F.3d 1467, 1469 (9th Cir. 1993). The IDEA requires educational agencies to implement procedures which provide "[a]n opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child[.]" 20 U.S.C. § 1415(b)(6). The parent or educational agency begins the process by filing a due process complaint. 20 U.S.C. § 1415(b)(6), (b)(7). The matter proceeds to a "due process hearing" before an impartial hearing officer. 20 U.S.C. § 1415(f)(1)(A). The hearing officer may order relief, such as requiring the educational agency to provide services to fulfill its obligations to provide a FAPE or to reimburse the parent for the cost of acquiring necessary services. 20 U.S.C. §§ 1401(22), 1412(a)(10)(C)(ii).

While a review of an OAH administrative decision under the IDEA is often referred to as a motion for summary judgment, the traditional summary judgment analysis does not apply. Capistrano Unified Sch. Dist. v. Wartenberg, 59 F.3d 884, 891-892 (9th Cir. 1995) ("Though the parties may call the procedure a 'motion for summary judgement' in order to obtain a calendar date from the district court's case management clerk, the procedure is in substance an appeal from an administrative determination, not a summary judgment."); see also Ojai, 4 F.3d at 1471-1472 (9th Cir. 1993) (Administrative review under the IDEA "is not a true motion for summary judgment.").

Additionally, judicial review of OAH decisions is less deferential than other kinds of administrative review. Courts are empowered to hear additional evidence at the request of any party, base decisions on "the preponderance of the evidence," and "shall grant such relief as the[y] determine[] is appropriate." 20 U.S.C. § 1415. Because of the preponderance of the evidence standard, the judiciary understands that "Congress intended courts to make bounded, independent decisions—bounded by the administrative record and additional evidence, and independent by virtue of being based on a preponderance of the evidence before the court." Town of Burlington v. Department of Educ., 736 F.2d 773, 791 (1st Cir. 1984), aff'd sub nom. Sch. Comm. v. Department of Educ., 471 U.S. 359 (1985).

## IV. DISCUSSION

Plaintiff's Motion for Summary Judgment is a storm of code provisions, all in support of her central claim that Defendant has violated J.T.'s right to a FAPE. (See Motion.) The Court has previously concluded that Plaintiff's arguments citing § 47605(c)(5)(J) and § 1668 are not separate claims and instead are subsumed in her larger claim under IDEA. (See Dkt. No. 16.) However, as each cited statute provides a distinct claim for a way in which Plaintiff alleges Defendant violated the IDEA, the Court assesses each statutory hook individually.

### A. California Education Code section 47605(c)(5)(J)

Plaintiff's first claim is that the School violated J.T.'s right to a FAPE through disenrollment which she claims violated California Education Code § 47605(c)(5)(J). (Motion at 6.) That provision governs the procedures by which charter schools may suspend or expel students for disciplinary reasons "or otherwise involuntarily remove[]" students "for any reason." Cal. Ed. Code § 47605(c)(5)(J). The statute requires that student removal procedures:

> [A]t a minimum, shall include an explanation of how the charter school will comply with federal and state constitutional procedural and substantive due process requirements that is consistent with all of the following:
>
> > (i) For suspensions of fewer than 10 days, provide oral or written notice of the charges against the pupil and, if the pupil denies the charges, an explanation of the evidence that supports the charges and an opportunity for the pupil to present the pupil's side of the story.
> >
> > (ii) For suspensions of 10 days or more and all other expulsions for disciplinary reasons, both of the following:
> >
> > > (I) Provide timely, written notice of the charges against the pupil and an explanation of the pupil's basic rights.
> > >
> > > (II) Provide a hearing adjudicated by a neutral officer within a reasonable number of days at which the pupil has a fair opportunity to present testimony, evidence, and witnesses and confront and cross-examine adverse witnesses, and at which the pupil has the right to bring legal counsel or an advocate.
> >
> > (iii) Contain a clear statement that no pupil shall be involuntarily removed by the charter school for any reason unless the parent or guardian of the pupil has been provided written notice of intent to remove the pupil no less than five schooldays before the effective date of the action. The written notice shall be in the native language of the pupil or the pupil's parent or guardian or, if the pupil is a foster child or youth or a homeless child or youth, the pupil's educational rights holder, and shall inform the pupil, the pupil's parent or guardian, or the pupil's educational rights holder of the right to initiate the procedures specified in clause (ii) before the effective date of the action. If the pupil's parent, guardian, or educational rights holder initiates the procedures specified in clause (ii), the pupil shall remain enrolled and shall not be removed until the charter school issues a final decision. For purposes of this clause, "involuntarily removed" includes disenrolled, dismissed, transferred, or terminated, but does not include suspensions specified in clauses (i) and (ii).

Cal. Ed. Code § 47605(c)(5)(J). The School did not provide a hearing to Plaintiff or to J.T. before disenrolling him. But though the overall statute applies to any students removed from school involuntarily for any reason, the specific portion of 47605(c)(5)(J)(ii)(II) which creates an entitlement to a hearing applies only to "suspensions of 10 days or more and all other expulsions for disciplinary reasons." Cal. Ed. Code § 47605(c)(5)(J)(ii).

Plaintiff offers no arguments suggesting J.T.'s disenrollment for not taking required tests was a "suspension[] of 10 days or more" or an "expulsion[] for disciplinary reasons." Cal. Ed. Code § 47605(c)(5)(J)(ii). Instead, she spends a significant portion of the Motion arguing that all of Education Code Section 47605(c) applies to charter schools. (Motion at 6-9.) This is odd. Of course Section 47605(c) applies to charter schools; the language of the relevant statutory provision encompasses "procedures by which pupils can be suspended or expelled from the charter school for disciplinary reasons or otherwise involuntarily removed from the charter school for any reason." Cal. Ed. Code § 47605(c)(5)(J). However, there is meaningful dispute over whether J.T.'s disenrollment was disciplinary or should be considered an expulsion. The administrative hearing below found that J.T. was disenrolled for not meeting testing requirements and not for violating any code of student conduct. (See OAH Decision.)

The Court affirms the OAH determination that J.T.'s disenrollment was neither disciplinary nor an expulsion. The OAH Decision noted that "restrictions placed on expelled students did not apply to" J.T., "as he could enroll in another school district without approval of the other school district's governing board." (OAH Decision at 13.) If legal restrictions which apply to expelled students did not apply to J.T., the Court presumes that J.T. was not expelled. The fact that Plaintiff carries a burden of proof and persuasion on this point but has made no argument supporting a finding that J.T. was expelled is fatal for her Motion.

Plaintiff also argues that the School has violated the portion of section 47605(c)(5)(J)(iii) governing notice, which states that when removing students, schools "shall inform the pupil, the pupil's parent or guardian, or the pupil's educational rights holder of the right to initiate the procedures specified in clause (ii) before the effective date of the action." (Motion at 16.) Plaintiff argues that though Plaintiff received notice in her native language more than five days before disenrollment, because the School did not notify Plaintiff of her right to a hearing, it violated 47605(c)(5)(J)(iii). (Id.) However, as discussed above, section 47605(c)(5)(J)(ii) did not apply to Plaintiff or J.T., therefore there were no "procedures specified in clause (ii)" required to be included in the School's letter.

## B. IDEA section 1415(k)(5)

Plaintiff's second claim is that J.T. was protected by 20 U.S.C. § 1415(k)(5). (Motion at 6.) That provision states that a child who has not been determined to be eligible for special education and related services, and who has engaged in behavior that violates a code of student conduct, may assert protections under the statute if an educational agency had knowledge that

the child was a child with a disability before the behavior that precipitated the disciplinary action occurred. 20 U.S.C. § 1415(k)(5).

It is undisputed that in lay terms, the School knew J.T. was a child with a disability before he was disenrolled. J.T. was receiving special education services from the School before Plaintiff disenrolled him from those services on April 1, 2019. However, regardless of whether J.T.'s disenrollment is considered a "disciplinary action,"—above, the Court holds that it was not—the 20 U.S.C. § 1415(k)(5) exemption precludes relief under this portion of the law. 20 U.S.C. § 1415(k)(5)(C) states that a local educational agency shall not be deemed to have "knowledge" that a child is a child with a disability if the parent of that child "has refused services under this subchapter." Plaintiff's April 1, 2019 revocation of consent to special education services constituted a refusal of special education services, thereby stripping J.T. of the protections of the chapter.

This makes sense. A general education student remains in general education until an IEP team determines the student is eligible for special education. 20 U.S.C. § 1414(b)(4)(A); 34 C.F.R. § 300.300(b)(1). Plaintiff's request for assessment of J.T. for special education on April 5, 2019 did not "un-do" her April 1, 2019 revocation of consent. It also did not reinstate J.T.'s status as a special education student. It would be incongruous with these provisions of the IDEA to automatically impute legal knowledge of J.T.'s disability on the School after Plaintiff's refusal of services but before a second assessment.

**C.  California Civil Code sections 1667 and 1668**

Plaintiff's final argument is that the Student Handbook contract she signed agreeing to submit J.T. for CASPP testing or alternative state testing is invalid because of Civil Code sections 1667 and 1668. (Motion at 14.) Defendant argues that the Court does not have jurisdiction to decide contract law issues that were not at issue in the proceeding below. (Opposition at 18.) Plaintiff's claim that the School denied J.T. a FAPE because her contract with the School was invalid fails whether or not the Court has jurisdiction.

California Civil Code section 1667 states that contracts are invalid if they are: "Contrary to an express provision of law; contrary to the policy of express law, though not expressly prohibited; or otherwise contrary to good morals." Section 1668 states that "[a]ll contracts which have for their object, directly or indirectly, to exempt any one from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." Neither provision applies here, even in light of California Education Code section 606145, which states that "a parent's or guardian's written request to school officials to excuse his or her child from any or all parts of the assessments administered pursuant to this chapter shall be granted."

The School's contract with Plaintiff was valid and not contrary to law. It allowed alternative testing—not reported to the State—if parents so requested, an option which Plaintiff declined to pursue. Indeed, as a charter school offering J.T. independent study homeschooling,

the School was required by California law to maintain evidence of "satisfactory educational progress." Cal. Ed. Code § 51749.5(a)(7)(D). Evidence of progress is supposed to include "a grade book or summary document that, for each course, lists assignments, examinations, and associated grades." Plaintiff is not entitled to cherry-pick the pieces of the Educational Code that suit her while ignoring the responsibility Defendant had to ensure J.T., who was being taught by Plaintiff at home, made satisfactory educational progress.

## V. CONCLUSION

For the reasons above, the Court DENIES Plaintiff's Motion and AFFIRMS the OAH's Judgment. The March 8, 2021 hearing is VACATED.

**IT IS SO ORDERED.**